IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

**ENTERED**
**06/22/2010**

| | | |
|---|---|---|
| | ) | |
| IN RE | ) | |
| | ) | |
| BRENTWOOD GROUP NO. 1, LTD., | ) | CASE NO. 10-80093-G3-11 |
| | ) | |
| Debtors, | ) | (Jointly Administered) |
| | ) | |

<u>MEMORANDUM OPINION</u>

The court has held a final hearing on the "Debtor's
Emergency Motion for Use of Cash Collateral" (Docket No. 7), and
a hearing on the "Debtor's Second Expedited Motion Re-Urging
Applications to Employ Accountant and Real Estate Appraiser"
(Docket No. 83), as it applies to the employment of Ronald P.
Little, MAI and his firm, National Realty Consultants.  The
following are the Findings of Fact and Conclusions of Law of the
court.  A separate conforming Judgment will be entered.  To the
extent any of the Findings of Fact are considered Conclusions of
Law, they are adopted as such.  To the extent any of the
Conclusions of Law are considered Findings of Fact, they are
adopted as such.

<u>Findings of Fact</u>

Brentwood Group No. 1, Ltd. filed a voluntary petition
under Chapter 11 of the Bankruptcy Code on February 25, 2010.
Brentwood Group No. 2, Ltd. and Brentwood Group No. 3, Ltd. filed
voluntary petitions under Chapter 11 of the Bankruptcy Code on

April 5, 2010.[1]  The cases were jointly administered by order
entered April 19, 2010.

Debtors own and operate portions of the Mall of the
Mainland, in Texas City, Texas.  Portions of the mall and
surrounding properties are also owned by non-debtor affiliates of
the Debtors.

Pacific Western Bank ("PWB") has filed a proof of claim
in each of the three cases, in the amount of $13,792,923.50,
asserting a security interest in the mall, an assignment of
rents, and all current and after acquired tangible and intangible
property owned by, or relating to, the mall.

The court has previously entered an interim order
(Docket No. 14) allowing Debtors' use of cash collateral of PWB
through March 31, 2010.  The court approved the stipulations of
the parties for continued use of cash collateral through June 1,
2010.  (Docket Nos. 30, 100).

On April 28, 2010, PWB filed a motion for relief from
stay, to permit it to foreclose on the real property.  (Docket
No. 68).  PWB's motion for relief from stay is set for an
evidentiary hearing on June 24, 2010.[2]

---

[1]Brentwood Group No. 1, Ltd., Brentwood Group No. 2, Ltd.
(the debtor in Case No. 10-80208-G3-11) and Brentwood Group No.
3, Ltd. (the debtor in Case No. 10-80209-G3-11) are collectively
referred to hereafter as "Debtors").

[2]The court notes also that there is additional pending
litigation between Debtors and PWB.  Debtors filed an adversary

2

On March 19, 2010, Debtors filed an application to employ Ronald P. Little, MAI and his firm, National Realty Consultants, as a real estate appraiser and consultant. (Docket No. 17). The application was denied without prejudice, and reconsideration was denied, for the reasons that the affidavits attached were insufficient. (Docket Nos. 41, 71). PWB objected to both the application to employ, and the motion for reconsideration, on grounds cash collateral should not be used to pay for what PWB considers to be optional services. (Docket Nos. 25, 52).

With respect to the instant motions, Debtors have re-urged the motion to reconsider this court's denial of the application to employ Little. The affidavit attached to the instant motion is sufficient, but PWB's objection remains. With respect to the cash collateral motion, the parties are agreed on Debtors' use of cash collateral, as to a budget of $279,710 per month, with the exception of line items in the budget for health insurance, in the amount of $1,570.00, lease vehicle, in the amount of $566.00, legal and accounting, in the amount of $10,000,[3] and payroll, in the amount of $7,500 for Mayer Makabeh

proceeding, Adv. No. 10-8026, objecting to PWB's claim, and requesting subordination of PWB's claim.

[3]The line item provides for $15,000 for legal and accounting services. Counsel for PWB announced that PWB does not object to $5,000 previously authorized as a retainer for Debtors' counsel, but does object to the remainder, which was to supply retainers

3

and $7,500 for Michael Makabeh.[4]

Michael Jayson, Debtors' accountant, testified that, at the request of PWB, he reviewed payments made by Debtor to credit card companies.  He testified that he identified several payments for services that he believes were of benefit to Mayer Makabeh and Michael Makabeh in their individual capacities.  He testified that Mayer Makabeh and Michael Makabeh have reimbursed Debtors for the expenditures, and that he has implemented accounting controls to prevent the future expenditure of funds of the bankruptcy estates for the personal expenses of Mayer Makabeh and Michael Makabeh.

Jayson testified that he is not requesting immediate payment.  He testified that he rarely draws on retainers prior to the end of a Chapter 11 case.  He testified that he has received a retainer from Debtors in the amount of $10,000.

Jayson testified that Debtors need to have an appraiser, because the value of the property is the key issue in determination of a plan of reorganization, and is also a key issue with respect to PWB's motion for relief from stay, and determining the amount of an adequate protection payment.

---

for Debtors' accountant and for Little.

[4]The parties also have a dispute as to the proper amount of adequate protection payments, but have put off the litigation of that issue to June 24, 2010, the date on which PWB's motion for relief from stay is set for an evidentiary hearing.

Jayson testified that he does not believe Mayer Makabeh and Michael Makabeh are providing professional management services for the mall.  He testified that he believes the development of a plan requires that professional management services be provided.  He testified that he believes Mayer Makabeh and Michael Makabeh are doing a good job of managing the mall on an interim basis.  He testified that Mayer Makabeh and Michael Makabeh are receiving salaries comparable to those payable to professional managers.  He testified that Mayer Makabeh and Michael Makabeh are taking care of the day to day operations of the mall, have general oversight over the mall's financial records, regularly meet with Jayson and Debtors' counsel to prepare for hearings and to work on developing a plan and disclosure statement, have worked on a business plan, and have met with potential investors.  He testified he believes the expenses for salary and medical coverage for Mayer Makabeh and Michael Makabeh are reasonable.  He testified that he has not determined when Mayer Makabeh and Michael Makabeh began receiving the salaries they are seeking to be paid.

With respect to the vehicle, Jayson testified that Mayer Makabeh and Michael Makabeh drive a Hummer, painted with advertisements for the mall.  He testified that Mayer Makabeh and Michael Makabeh do not drive the vehicle for personal use, other than driving to and from the mall to work.  Jayson testified that

he does not know who owns the vehicle.

Jayson testified that there is a ring of land around the mall, owned or controlled by the Makabeh family or its entities, which the Makabeh family has proposed to contribute as new capital under a proposed plan of reorganization.[5]  He testified that this contribution is the source of funds for distribution to unsecured creditors under the proposed plan.

Jayson testified that Debtors are making what they believe to be adequate protection payments of $30,000 per month to PWB.  He testified that the debt service on the note is approximately twice that amount.

Little testified that he has commenced preparing an appraisal of the mall.  He testified at the hearing on June 3, 2010 that he anticipated completing his work by the end of the following week.  He testified that the appraisal he is preparing does not include the value of the property owned by entities other than Debtor that are proposed to be contributed to Debtor under the proposed plan.  He testified that he agreed to a retainer of $15,000, and a fee of $17,000 for preparing the appraisal, plus $250 per hour for expert witness testimony.  He testified that he has no connections with any of the parties in

---

[5]The proposed plan calls for the Makabeh Family Trust to receive a 50 percent limited partnership interest in the reorganized debtor entity.

6

the case, holds or represents no interest adverse to the estate, and is a disinterested person.

### Conclusions of Law

Section 327(a) of the Bankruptcy Code provides that the trustee (which includes a Chapter 11 Debtor in possession), with the court's approval, may employ, inter alia, appraisers, "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." 11 U.S.C. § 327(a).

Section 506(c) of the Bankruptcy Code provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, including the payment of all ad valorem property taxes with respect to the property.

11 U.S.C. § 506(c).

Section 363(c)(2) provides:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless-
>
>> (A) each entity that has an interest in such cash collateral consents; or
>>
>> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2).

Section 363(e) provides, on request of an entity whose

7

cash collateral the trustee proposes to use, that the court shall prohibit or condition such use "as is necessary to provide adequate protection of such interest."  11 U.S.C. § 363(e).

In the instant case, there is insufficient evidence to support a conclusion that PWB is adequately protected with respect to the expenditure of cash collateral to pay those line items to which it has not consented.  Debtors' sole evidence as to adequate protection is that they have paid approximately $30,000 per month to PWB, and that that amount is less than half the debt service under the note.  The parties have deferred to June 24, 2010 addressing the proper amount of adequate protection payments.  The court concludes that the use of cash collateral for these line items should not be permitted at this time, without prejudice to Debtors' re-urging such relief and making a proper evidentiary showing, either in the context of providing for allowed administrative expense claims in a plan of reorganization, or in seeking to surcharge PWB's security interest in the mall.

The question of whether cash collateral may be utilized to fund a retainer is not dispositive of whether Debtors should be permitted to employ Little.  Little's testimony that he has no connections with any of the parties in the case, holds or represents no interest adverse to the estate, and is a disinterested person is uncontroverted.  The court concludes that

8

Debtors should be permitted to employ Little.  However, the matter of Little's compensation must await the determination of whether the estate has sufficient funds to pay such compensation, a determination which may itself depend on the results of the June 24, 2010 hearings.[6]

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on June 22, 2010.


_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE

_____

[6]The court notes that Little testified he has undertaken the work, and likely will be nearing completion of the work, prior to this court's ruling on the instant application.